**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**GARY WAYNE LOVE**                                                                                          **PLAINTIFF**

**V.                                   CASE NO. 1:13CV00048-BD**

**CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration**                                                                        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gary Wayne Love appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").[1]  For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.     Background**

On July 13, 2011, Mr. Love protectively filed for DIB benefits due to post-traumatic stress disorder ("PTSD"), neck and shoulder problems, and irritable bowel syndrome.  (Tr. 11-12, 140 )  Mr. Love's claims were denied initially and upon reconsideration.  At Mr. Love's request, an Administrative Law Judge ("ALJ") held a hearing on January 10, 2013 where Mr. Love appeared with his lawyer.  (Tr. 21)  At the hearing, the ALJ heard testimony from Mr. Love and a vocational expert ("VE").  (Tr. 22-46)

---

[1] At the administrative hearing, Mr. Love's attorney asked to amend the disability application to accept a claim for Supplemental Security Income under Title XVI.  (Tr. 24-26)  The ALJ denied the request due to Mr. Love's resources.  (Tr. 9)  Mr. Love does not challenge that decision in this case.

The ALJ issued a decision on February 22, 2013, finding that Mr. Love was not disabled under the Act.  (Tr. 9-17)  On April 3, 2013, the Appeals Council denied Mr. Love's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-4)

Mr. Love, who was 54 years old at the time of the hearing, had a high school education, and had past relevant work experience as an Army supply officer, a nuclear weapons material manager, hazardous material removal worker, and construction laborer. (Tr. 16, 27)

II.     **Decision of the Administrative Law Judge**[2]

The ALJ found that Mr. Love had not engaged in substantial gainful activity from his alleged onset date of October 30, 2000, through his last-insured date of September 30, 2004, and that he had the following severe impairments: degenerative joint disease of the right shoulder.  (Tr. 11)  The ALJ also found that Mr. Love did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[3]  (*Id.*)

---

[2] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. § 416.920(a)-(g) (2005).

[3] 20 C.F.R. §§ 4040.1520(d), 404.1525, 404.1526.

According to the ALJ, Mr. Love had the residual functional capacity ("RFC") to perform light work. He could lift and carry 20 pounds occasionally and less than 10 pounds frequently, and push and/or pull 10 pounds occasionally and less than 10 pounds frequently. There could be no repetitive overhead reaching with the right arm, but he could occasionally reach overhead with the left arm. (Tr. 12) The VE testified that Mr. Love could perform his past relevant work as a general supply officer, as well as additional jobs with the limitations identified by the ALJ, such as information clerk, food checker, and receptionist. (Tr. 44-45)

After considering the VE's testimony, the ALJ determined that Mr. Love could perform his past relevant work as of the date he was last insured, and thus found that Mr. Love was not disabled.

## III. Analysis

### A. Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but,

the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B. Mr. Love's Arguments for Reversal

Mr. Love argues that the Commissioner's decision should be reversed because it is not supported by substantial evidence. Specifically, he argues that the ALJ erred because: (1) Mr. Love was diagnosed with PTSD as early as 2003; (2) he had degenerative joint disease of the right shoulder and IBS, which were "confirmed by the VA, yet rejected by the ALJ for some reason"; and (3) the ALJ's opinion is contrary to the VE's testimony. (Docket entry #11)

#### 1. PTSD

Mr. Love asserts that the record "makes it abundantly clear that the PTSD arose prior to 2004, manifested itself before 2004, and has been a cause of [his] inability to find work." (#11)

At step two, the ALJ determined that Mr. Love's PTSD was not a severe impairment because it was adequately controlled by medication. See *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (holding depression not severe when it improved with medication). As the ALJ noted, this finding is supported by the medical evidence from the relevant time period. It appears that Mr. Love first visited the doctor regarding his "mood" on April 24, 2003, and the doctor started him on 50 mg Zoloft daily. At a follow-up visit a month later, Mr. Love was doing much better since starting Zoloft and the doctor noted that his "mood appear[ed] much better than [the] last visit."

In August 2003, Mr. Love complained of nightmares. On May 11, 2004, he indicated that he was not as bad as he had been, but had regressed a little. (Tr. 222) The doctor increased the Zoloft to 100 mg daily. On October 4, 2004, Mr. Love reported that he "was having some trouble with his sleep but switched to taking the Zoloft at 3 p.m. and that seem[ed] to help him quite a bit." (Tr. 221).

After the relevant time period, in April 2005, Mr. Love, who was still taking 100 mg of Zoloft, complained again about bad dreams and lack of motivation, but indicated that it was not "too bad of a problem at this time, however." (Tr. 221) His next visits were not until 2006 and 2007, and there were no complaints about his PTSD or Zoloft. The only mention of either is for history. (Tr. 220)

Mr. Love complains only that his PTSD affects his sleep, not that it affects his ability to work. (Tr. 155, 158) In sum, Mr. Love failed to show that his PTSD caused any work-related limitations during the relevant time period.

### 2. Other Ailments

Mr. Love argues that the ALJ disregarded his right shoulder injury and IBS, both of which the VA found disabling. Specifically, the VA assigned a 30% disability rating for IBS and 20% for the shoulder injury. (Tr. 36)

Although the ALJ "should consider the VA's finding of disability," he "is not bound by the disability rating of another agency when he is evaluating whether the claimant is disabled for purposes of social security benefits." *Pelkey v. Barnhart*, 433 F.3d 575, 579 (8th Cir. 2006). Here, the ALJ recognized that the VA assigned a 30%

disability rating for the IBS, but noted that it was effective April 20, 2011. Additionally, the ALJ noted that there was no medical evidence reflecting that Mr. Love received treatment for IBS during "the period in question," and noted that the medical evidence failed to "establish this impairment as severe on or before September 20, 2004." (Tr. 11) Although Mr. Love testified that he had suffered from IBS since the Gulf War, there was no medical evidence to support IBS as a severe impairment during the relevant time period. (Tr. 30, 583, 659) Even Mr. Love's counsel conceded that he did not see anything in the record regarding IBS, and there are no citations to medical evidence in his brief to the contrary.[4]

### 3.    VE's Testimony

Mr. Love asserts that the ALJ's finding is contrary to the VE's testimony, which made clear that "there is no job, of any kind, available to" Mr. Love. (#11) In support, Mr. Love refers to his hearing testimony regarding his ability to walk, sit, stand, lift, etc. Mr. Love also points out that the "'kicker' of course is the 'unscheduled' work break question, obviously overlooked by the ALJ when he reached his final decision." (*Id.*)

As to Mr. Love's last point, it is true that the VE testified that there would be no jobs available for a hypothetical person with Mr. Love's other restrictions who also "required unscheduled work breaks multiple times throughout the work day. . . ." (Tr. 45). But, as noted, the ALJ properly found that Mr. Love's IBS was not a severe impairment between the alleged onset date and the date last insured, which means that

---

[4]"ALJ: Mr. Skinner, did you see anything in the record regarding irritable bowel syndrome? ATTY: Judge, I have not seen that . . . ." (Tr. 31)

Mr. Love was not similar to the hypothetical person just referenced, and the ALJ correctly disregarded this limitation.

As for Mr. Love's other impairments, the ALJ appropriately considered Mr. Love's testimony along with the objective medical evidence and determined that he could perform a reduced range of light work, but with the added restriction that there could be no repetitive overhead reaching with the right arm and only occasional overhead reaching with the left arm. (Tr. 13) The ALJ noted that in June 2000, Mr. Love complained of numbness in his hands, which was treated with a splint and Vioxx. (Tr. 224) In December 2000, he also complained to his chiropractor about numbness in both hands. (Tr. 288) However, in a follow-up visit in June 2001, the doctor noted that Mr. Love's "hands have done much better since he is not doing the same job, and we've stopped the Vioxx today." (Tr. 223)

Mr. Love saw a chiropractor several times between 2000 and 2004 for right arm pain and numbness in his hands. However, the ALJ found that a chiropractor is "not considered an acceptable medical source" for determining disability.[5] (Tr. 15) The ALJ also noted that there was no treatment at the VA for any of Mr. Love's shoulder, arm, and hand impairments during the relevant time period. Additionally, the records from his treating physician do not reveal any significant complaints about, or treatment of, his other alleged impairments during the relevant time period. Mostly, Mr. Love was getting

---

[5] See *McDade v. Astrue*, 720 F.3d 994, 999 (8th Cir. 2013) ("Although a chiropractor is not an acceptable medical source for determining disability . . . evidence from a chiropractor may be used to show 'the severity of [claimant's] impairments and how it affects [claimant's] ability to work.")

refills of blood pressure medication and treatment for his anxiety/depression. (Tr. 221-224) Accordingly, the ALJ properly found that the objective medical evidence did not support Mr. Love's testimony regarding the severity of his conditions.

## IV.     Conclusion

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, Mr. Love's appeal is DENIED, and the Clerk of Court is directed to close the case.

IT IS SO ORDERED, this 27th day of May, 2014.

_____
UNITED STATES MAGISTRATE JUDGE